FILED

October 5, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 3:00 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | |
|---|---|
| Karen Quinn,<br>    Employee,<br>v.<br>Seaton Corp. d/b/a SMX Staff<br>Management,<br>    Employer<br>and,<br>New Hampshire Insurance Co.,<br>    Carrier. | Docket No.:  2015-06-0025<br><br>State File No.: 3004-2015<br><br>Chief Judge Kenneth M. Switzer |

## DISMISSAL ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge on September 30, 2015, for a telephonic hearing on the Motion to Dismiss pursuant to Tennessee Compilation Rules and Regulations, Rule 0800-02-21-.14(3) (2015) (Rule .14(3)) filed August 25, 2015, by the Employer, Seaton Corp. d/b/a SMX Staff Management. The central legal issue is whether the Employee, Karen Quinn, resolved the evidentiary inadequacies in her claim or articulated a clear intent and method to do so. For the reasons set forth below, the Court finds SMX's motion well-taken and dismisses Ms. Quinn's case with prejudice to its refiling.

### History of Claim

Ms. Quinn filed a Petition for Benefit Determination seeking medical benefits for injuries she allegedly suffered on November 21, 2014, while working for SMX, a staffing agency for Amazon.com. Specifically, she alleged injuring her low back while attempting to lift a steel workbench by herself. The central issue for adjudication at the Expedited Hearing was whether Ms. Quinn's injury arose primarily out of and in the course and scope of her employment. In the resulting Expedited Hearing Order Denying Medical Benefits (Appended to this Order), this Court concluded it did not.

At the outset of the Expedited Hearing, the Court advised the parties it must apply the Tennessee Rules of Evidence. The Court pre-marked exhibits, which did not include

1

records from Ms. Quinn's family practice physician, Dr. John Shaw, and designated the technical record. The Court stated:

> Now, I want you to know, I've − there are a lot of documents in the file, and I've looked at most of them. But I want to make sure the parties understand that I'm only going to consider in making a decision the documents that are properly introduced as exhibits − the ones that we've already marked, or the ones that may come in as a result of someone's testimony and they've been properly identified. So, I want you to know, that I have looked at a couple of things, but I am not considering those unless either one of you gets them properly into evidence.

Ms. Quinn registered her understanding, seeking the following clarification:

> Ms. Quinn: When I submitted things, uh, for filing, um, that did not automatically make that as part of the evidence?
>
> The Court: That's correct.
>
> Ms. Quinn: It did not?
>
> The Court: It did not.
>
> Ms. Quinn: It did not?
>
> The Court: It did not, and − and so it has to be properly authenticated and introduced, OK?

The Court further stated:

> I do note, Mr. Newton, that you subpoenaed, and there are in the file, 308 pages of medical records from a Dr. Shaw. I'm not pre-marking those. Um, I've looked through them. Lots of stuff in there, so if there's something in there that's particularly relevant, you have a medical certification attached to those. I would like to only introduce whatever the particularly relevant page is.

The Court explained the Bureau's rules for organizing medical records in advance of hearings. Mr. Newton stated that he understood the rule and apologized for failing to comply, adding, "I don't intend to proffer much, if anything, from them." The Court concluded, "Anyway, those [Dr. Shaw's] are not marked as exhibits at the present time. I just want you to know that."

2

This Court's sixteen-page Expedited Hearing Order detailed each witness' testimony, with the Court concluding that virtually every witness, including Ms. Quinn, either testified inconsistently or had difficulty remembering critical events relevant to the alleged injury, and therefore they were not particularly credible. The Court found one witness credible, EMT Michelle Ammerman, who treated Ms. Quinn following her alleged injury at the Amcare (Amazon onsite) Clinic. Ms. Ammerman testified that Ms. Quinn said her back started to hurt before going to bed on November 16, 2014, and that she reported hurting her back doing yoga several years ago. Ms. Ammerman's notes documenting Ms. Quinn's treatment substantiated her testimony.

Given the overall lack of credible testimony, the Court relied heavily upon its consideration of fifteen exhibits. Perhaps the most probative documentary evidence was the original copy of a one-page "Non-Work-Related Declaration." The Court considered the circumstances of its execution as described in Ms. Quinn's and Robert Fratsch's testimony, and examined the document itself closely, concluding that it was "plain on its face," Ms. Quinn signed it and she understood its significance.

SMX sought dismissal with prejudice of this claim because Ms. Quinn did not introduce sufficient evidence at the Expedited Hearing to prove she suffered an injury by accident arising primarily out of and in the course and scope of her employment. At the Expedited Hearing, Ms. Quinn did not argue, nor did the Court decide, whether Ms. Quinn suffered from a pre-existing condition aggravated by a work-related injury. SMX argued that the Expedited Hearing, held over two days, yielded testimony from six "available, pertinent and relevant" witnesses and involved the introduction of fifteen exhibits. The Court concluded Ms. Quinn was not likely to prevail at a hearing on the merits of the claim. The Appeals Board affirmed.

According to SMX, should the matter progress to a compensation hearing, the same proof would likely be presented. Ms. Quinn's Objection to the Motion to Dismiss and her arguments at the hearing re-asserted the same arguments, relying solely upon evidence from the Expedited Hearing. SMX argued Dr. Shaw's records are irrelevant to the issue of whether Ms. Quinn sustained an injury by accident. SMX contended that Ms. Quinn failed to articulate a clear intent to resolve the evidentiary inadequacies of her claim.

Ms. Quinn objected to the dismissal. She did not know that this Court did not admit Dr. Shaw's records into evidence at the Expedited Hearing, and that the Appeals Board did not consider them. Ms. Quinn argued that, her "twenty years of medical records" from Dr. Shaw are relevant because they would disprove Ms. Ammerman's assertions that Ms. Quinn told her she felt pain before going to bed on November 16, 2014, and that she told Ms. Ammerman she suffered a previous back injury doing yoga. In addition, these records are relevant because they document she never suffered a previous back injury. Ms. Quinn further argued that the SMX witnesses were untruthful,

3

while she was a credible witness. Ms. Quinn re-asserted she did not read the "Non-Work Related Declaration," which was obscured on a clipboard. Ms. Quinn stated she seeks to obtain additional, up-to-date proof from Dr. Shaw to substantiate her claim that she suffered an injury by accident.

## Findings of Fact and Conclusions of Law

Rule .14(3) provides that, where a claim is denied on grounds of compensability following an Expedited Hearing, the employer may file a motion to dismiss the claim. Rule .14(3) provides a procedural mechanism for the potential dismissal of a workers' compensation claim which, by definition, is tied to a procedure—an Expedited Hearing— that is unique to the Court of Workers' Compensation Claims. As such, a Rule .14(3) motion is distinct from the dismissal mechanisms (motions to dismiss and for summary judgment) provided for in the Tennessee Rules of Civil Procedure. For that reason, the Court finds that a Rule .14(3) motion to dismiss is an alternate procedure as contemplated by section 50-6-239(c)(1), and that the standards and procedures applied to motions to dismiss or motions for summary judgment under the Tennessee Rules of Civil Procedure do not govern the determination of a Rule .14(3) motion.

A party may only file a Rule .14(3) motion after the Court conducts an Expedited Hearing and denies the claim on the grounds of compensability. When denying relief at an Expedited Hearing, the Court must find that the employee would be unlikely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2014).

In this case, while the Court did not make an explicit finding in its Expedited Hearing Order of noncompensability, the Court's findings and conclusions of law accomplished the same effect. Specifically, the Court began its analysis by explaining that, "To be *compensable* under the workers' compensation statutes, an injury must arise primarily out of and occur in the course and scope of employment." (Emphasis added.) This Court found that Ms. Quinn "failed to satisfy the 'course of employment' requirement" due to conflicting evidence regarding the date of the alleged incident. The Court further found insufficient proof of causation, in light of the overall credibility problems with Ms. Quinn's testimony, and the fact that she knowingly signed the "Non-Work Related Declaration." The Court denied the relief Ms. Quinn sought. While imprecisely worded, the inescapable conclusion is that the Court denied the claim on grounds of compensability. To conclude otherwise elevates form over substance. *See Silas v. Brock Services,* No. 2014-02-0013, 2015 TN Wrk. Comp. App. Bd. ____, sl. op. at 5 (Tenn. Workers' Comp. App. Bd. Oct. 2, 2015).

That being the case, Rule .14(3) provides a procedural mechanism by which an employer can force an injured worker to address the evidentiary inadequacies that resulted in the adverse decision at the Expedited Hearing. If, in response to the employer's Rule .14(3) motion, the injured worker does not resolve the evidentiary

4

inadequacies in his or her claim or articulate a clear intent and method to do so, the Court may dismiss the injured worker's claim.

As stated above, SMX's Rule .14(3) motion forced Ms. Quinn to address the evidentiary inadequacies by either producing evidence that her injury arose primarily out of and in the course and scope of her employment or articulating a clear intent and method to do so. At the motion hearing and in her objection, Ms. Quinn failed to produce evidence or propose evidence to address her claim's evidentiary inadequacies. Rather, she largely re-asserted claims that this Court rejected following a lengthy, exhaustive evidentiary hearing.

Much of Ms. Quinn's evidence at the Expedited Hearing centered upon lay testimony regarding the events of the alleged date of injury and the days immediately following it. Trial courts are "uniquely positioned to observe the demeanor and conduct of witnesses." *Kelly v. Kelly,* 445 S.W.3d 685, 692 (Tenn. 2014). This Court listened carefully, and viewed the demeanor and conduct of all witnesses, prior to making its credibility assessments. The Court stands steadfastly by these determinations, and finds it unlikely that the witnesses would alter the substance of their testimony or the manner in which it is presented in any way meaningful way at a subsequent compensation hearing. Moreover, this Court found in the Expedited Hearing Order that Ms. Quinn signed the "Non-Work Related Declaration," and concluded that she understood what she signed. That conclusion is unlikely to change.

With regard to Dr. Shaw's records, as outlined above, the Court took detailed steps to explain the rules governing the Expedited Hearing, including that the Rules of Evidence apply, and the Court would only consider proof admitted into evidence. Indeed, Ms. Quinn and the Court *directly addressed* that point in the exchange previously recounted within this Order.

Assuming, arguendo, that the certified records were admitted into evidence in a subsequent compensation hearing, this Court is unlikely to place much weight upon them for the proposition Ms. Quinn suggests they support – that she had no pre-existing back conditions or injuries prior to the alleged injury in this case. Rather, this Court agrees with SMX's contention that whether or not she had pre-existing back conditions or injuries is not relevant to whether Ms. Quinn sustained an injury by accident on November 21, 2014, while under its employ.

Additionally, Ms. Quinn stated an intent to secure an expert opinion from Dr. Shaw that she suffered an injury by accident. Assuming he provides such an opinion, the Court is not likely to place great weight upon it because, while Dr. Shaw is qualified to render an expert opinion on Ms. Quinn's medical condition, he has no independent knowledge of whether Ms. Quinn sustained an injury on the alleged date of injury, November 16, 2014, or earlier. In sum, the Court remains unpersuaded that Ms. Quinn

has established a likelihood that she will prevail at a hearing on the merits, in light of the substantial evidence supporting the contrary conclusions this Court has already reached.

This Court acknowledges that, "Tennessee Court have long expressed a preference for deciding cases on the merits." *Smith v. The Newman Grp., LLC,* No. 2015-08-0075, 2015 TN Wrk. Comp. App. Bd. LEXIS ___, sl. op. at 5 (Tenn. Workers' Comp. App. Bd. Sept. 21, 2015.) At the same time, the general assembly emphasized "efficiency and timeliness in the 2013 Workers' Compensation Reform Act." *Id.* In addition, "trial courts have been charged with controlling the pace of litigation through the use of supervision and docket management which will ensure efficient disposition of civil cases." *Id.*

In applying these principles, this Court concludes that it decided Ms. Quinn's case on the merits at the interlocutory phase, and based on Ms. Quinn's failure to articulate a clear intent or method by which to propose an alteration to the Court's original conclusions, that outcome is unlikely to change at a compensation hearing. In keeping with the lawmakers' intent when they enacted the 2013 reforms, and in exercising this Court's charge to control the pace of litigation and docket management to ensure the efficient disposition of cases, the Court finds it appropriate to dismiss Ms. Quinn's claim.

Finally, Rule .14(3) is silent regarding whether a dismissal under it is with or without prejudice. The Court agrees with SMX that Ms. Quinn received a full, fair opportunity to present her case, but nonetheless failed to meet her burden. It should be noted that, prior to the two-day Expedited Hearing, this Court continued the hearing to afford her extra time to subpoena witnesses. The parties have thoroughly and vigorously litigated this matter. It would seem contrary to the purposes of Rule .14(3), as well as the legislative intent of the 2013 reforms, to dismiss the matter, only to allow Ms. Quinn to re-file her claim and force SMX to make the very same arguments, expending additional time and resources. For this reason, and for the sake of judicial economy, the Court dismisses Ms. Quinn's claim with prejudice.

IT IS, THEREFORE, ORDERED as follows:

1. Ms. Quinn's claim for benefits under the Tennessee Workers' Compensation Act is dismissed with prejudice to the refiling of the claim.

2. The Court taxes the $150 filing fee in this claim to SMX and/or its workers' compensation carrier pursuant to Rule 0800-02-21-.07 (2015) of the Tennessee Compilation Rules and Regulations, for which execution may issue as necessary. SMX or its carrier shall promptly remit the filing fee to the Clerk of the Court of Workers' Compensation Claims.

3. Unless an appeal of this order is filed with the Workers' Compensation

Appeals Board or the Tennessee Supreme Court, this order shall become final in thirty days.

ENTERED THIS THE 5th DAY OF OCTOBER, 2015.

Chief Judge Kenneth M. Switzer
Court of Workers' Compensation Claims

Right to Appeal:

Tennessee Law allows any party who disagrees with this Dismissal Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within thirty days* of the date the Dismissal Order was entered by the Workers' Compensation Judge. *See* Tenn. Comp. R. & Regs. 0800-02-22-.01(1)(b) (2015).

3. Serve a copy of the Request For Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the motion hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within fifteen days after filing the request for appeal. *See* Tenn. Comp. R. & Regs. 0800-02-22-.01(4) (2015). Alternatively, the parties may

7

file a joint statement of the arguments raised at the motion hearing within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Workers' Compensation Appeals Board, the appeal will be docketed and assigned to an Appeals Board Judge for Review. At that time, a docketing notice shall be sent to the parties. Thereafter, the parties have fifteen calendar days to submit briefs to the Appeals Board for consideration. *See* Tenn. Comp. R. & Regs. 0800-02-22-.02(3) (2015).

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Dismissal Order was sent to the following recipients by the following methods of service on this the 5th day of October, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Karen Quinn, Employee | X | | X | Karen.Quinn@mac.com;<br>57 3rd Ave. N.,<br>Mt. Juliet, TN, 37122 |
| Mike Newton, Employer's attorney | | | X | Mike.Newton@Leitnerfirm.com |

Penny Shrum, Clerk of Court
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

8





## COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | |
|---|---|
| Karen Quinn, | ) Docket No.: 2015-06-0025 |
|       Employee, | ) |
| v. | ) State File No.: 3004/2015 |
| | ) |
| SMX, | ) Date of Injury: November 21, 2014 |
|       Employer, | ) |
| And | ) Chief Judge Kenneth M. Switzer |
| | ) |
| New Hampshire Insurance Company/ | ) |
| Gallagher Bassett, | ) |
|       Insurance Carrier/TPA. | ) |

---

## EXPEDITED HEARING ORDER DENYING MEDICAL BENEFITS

---

THIS CAUSE came to be heard before the undersigned Workers' Compensation Judge on July 1 and 20, 2015, upon the Request for Expedited Hearing filed by Karen Quinn (Ms. Quinn), the Employee, on April 7, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2014) to determine if the Employer, SMX, is obligated to provide medical benefits. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes that Ms. Quinn is ineligible for the requested relief at this time.

### ANALYSIS

#### Issues

- Whether Ms. Quinn sustained an injury that arose primarily out of and in the course and scope of her employment with SMX.

- Whether Ms. Quinn suffered from a pre-existing condition that was aggravated by a work-related injury[1].

---

[1] The Mediation Specialist checked this as an issue on the Dispute Certification Notice. However, in light of Ms.

1

- Whether SMX is obligated to provide Ms. Quinn a panel of physicians.

## Evidence Submitted

The Court admitted into evidence the exhibits below:

1. Certified Medical Records, AmCare, 3 pages,
2. Affidavit of Karen Quinn, May 26, 2015, 6 pages,
3. Audio recording of Ms. Quinn's Statement to Adjuster,
4. "Non-Work Related Declaration," blank, filed on May 28, 2015,
5. "Non-Work Related Declaration," signed by Ms. Quinn on December 1, 2014; original document, 1 page,
6. Affidavit of Lisa Maddox, undated, 1 page,
7. Form C-20, First Report of Injury, January 9, 2015,
8. Certified Medical Records, Target Pharmacy, May 28, 2015, 4 pages,
9. Memo to Amber, SMX Management, from Ms. Quinn, December 4, 2014, and "Addendum & Correction," 4 pages,
10. "Accident/Injury November 21, 2014," March 9, 2015, 2 pages,
11. Email from Herb Harlen to Ms. Quinn, December 2, 2014,
12. "Supportive Feedback Document," final written warning, November 22, 2014,
13. Email from Ms. Quinn to Herb Harlen, November 25, 2014,
14. Email from Ms. Quinn to Herb Harlen, November 20, 2014, and
15. Certified mail receipt, SMX/AmCare/Michelle Ammerman.

The Court designated the following as the technical record:

- Petition For Benefit Determination (PBD), January 13, 2015,
- SMX's Position Statement: Email to Mediation Specialist, February 4, 2015,
- Dispute Certification Notice (DCN), March 18, 2015,
- Ms. Quinn's Position Statement: "Accident/Injury November 21, 2014," and
- Request For Expedited Hearing (REH), April 7, 2015.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments to them as allegations unless established by the evidence.

---

Quinn's testimony that she never sustained a previous back injury prior to the alleged date of injury, and she made no arguments advancing a position on this issue, the Court considers it waived.

2

The following witnesses testified during the hearing:

- Ms. Quinn
- Herb Harlen
- Robert Fratsch
- Michelle Ammerman
- Amber Weisenhutter (by telephone)
- Wesley Brooks (by telephone).

## History of Claim

Ms. Quinn is a fifty-seven (57)-year-old resident of Davidson County, Tennessee. She filed a PBD with the Bureau of Workers' Compensation on January 13, 2015, seeking medical benefits. The parties did not resolve the disputed issues through mediation, and the Mediation Specialist filed the DCN on March 18, 2015. Ms. Quinn filed an REH on April 7, 2015.

At the Expedited Hearing, Ms. Quinn testified that she holds bachelor's and master's degrees from Vanderbilt University, and she is a Tennessee Supreme Court Rule 31 Certified Mediator. She alleged a low-back injury (PBD, p. 1), and testified that she never suffered a previous back injury.

Ms. Quinn's employment with SMX, a staffing agency, began on October 31, 2014. SMX placed her at the Amazon.com Distribution Center in Lebanon, Tennessee, as a "picker." She testified, reading largely from her Affidavit (Ex. 2), that, on the morning of Friday, December[2] 21, 2014, she scanned a large, long box that contained a Rockwell steel workbench. Because she was unable to find anyone to assist her, she moved the box herself onto a cart. Afterward, her back felt sore and strained. She continued to work, moving several other heavy boxes.

According to Ms. Quinn, that afternoon, her supervisor, Ms. Weisenhutter, gave her a "final written warning" for one hour and fifteen (15) minutes' time off task. Ex. 12. Ms. Quinn testified that Ms. Weisenhutter did not allow her to read the document, nor did she sign it. The Court notes that the warning, entitled "Supportive Feedback Document," bears Ms. Quinn's signature. It states that Ms. Quinn received the warning for an incident on November 21, 2014, and is dated November 22, 2014.

Ms. Quinn testified that the following morning, she could barely walk without bending over and holding on to nearby objects. She went to work and told an Amazon supervisor, "Jake," about the injury. According to Ms. Quinn, he did not tell her to go to

---

[2] Ms. Quinn testified that the date of injury was December 21, 2014, but clarified on cross-examination that she meant November 21, 2014. The latter date appears on all forms she filed with the Bureau and her Affidavit, Ex. 2.

Amazon's onsite clinic, AmCare, nor did he report the injury. Rather, he suggested she get ice at AmCare. Because she did not think ice would help, she did not go.

On November 28, 2014, she reported the injury to Ms. Weisenhutter in an attempt to explain the time off task. Per Ms. Quinn, Ms. Weisenhutter escorted her to AmCare. At the clinic and in Ms. Weisenhutter's presence, Ms. Quinn explained how she injured herself to an EMT (emergency medical technician). Per Ms. Quinn, Ms. Weisenhutter then asked her to sign a document, which she initially thought was an injury report but later realized was a "Non-Work Related Declaration." Ms. Quinn did not indicate whether she signed the document, which neither party introduced into evidence.

The AmCare records documenting the November 28, 2014 visit (*See generally* Ex. 1) provide, "AA stated that she was at home and noticed her back began to hurt before she got into bed on 11/16/2014." The cause is "unknown," and the date of onset is "11/16/2014." The records do not classify the injury as "new," but read, "AA stated that her lower back has been injured in the past when she was a yoga instructor – exact date unknown." The notes further provide:

> AA stated that she noticed that her back had started to hurt at home before bed on 11/16/2014, the next morning she came to work and states that it was a little sore but she thought it would work its self [sic] out and it was a little better by the end of the day when she went home. AA returned to work on Tuesday 11/18/2014 and states it was more sore that morning so she told Jake – Jake advised her to go to AMCARE but she stated that she didn't think they could do anything for her so she chose NOT to go to AMCARE. AA came to AMCARE on 11/28/14 stating that her back was sore and that she had been lifting items that said team lift by herself with no help . . . AA stated she had a prior back issue years ago when she was teaching yoga and had just recently been teaching yoga classes to seniors.

According to Ms. Quinn, after Ms. Weisenhutter left the AmCare Clinic on November 28, 2014, the EMT applied Biofreeze spray to her lower back. Upon the EMT's advice, Ms. Quinn returned on the mornings of November 29 and 30, 2014, for additional Biofreeze applications. During the AmCare treatments, per Ms. Quinn, she never mentioned that she taught yoga, or that she sustained a previous back injury while doing yoga.

Ms. Quinn had a conversation with Mr. Fratsch, SMX's Safety Manager, in which she told him she sustained a work-related injury. According to Ms. Quinn, Mr. Fratsch asked her to sign a document verifying that he previously provided safety training. Ms. Quinn testified that the document was on a clipboard and was rolled in such a manner so that she could not read the entire document. She signed it "with trepidation." After their conversation ended, she overheard an exchange between Mr. Fratsch and Ms.

4

Weisenhutter, in which Ms. Weisenhutter asked, "Did you get her to sign it?" He responded affirmatively, and Ms. Weisenhutter said, "Good."

Ms. Quinn did not work from December 2 through 4, 2014. On December 5, 2014, SMX terminated her. Ms. Quinn testified that, at the time, the back pain persisted and it still persists.

On cross-examination, Ms. Quinn testified that she injured her back on the same day she received the written warning. Ex. 12. She said lifting the steel bench injured her back, but she subsequently lifted other heavy boxes as well. Her injury was not cumulative. Although she awoke with pain the following day, it subsided enough so that she could work. Ms. Quinn acknowledged that she did not go to AmCare, or seek any other medical treatment, from November 22 through 27, 2014, because she believed she strained a muscle and hoped, with rest, it would improve.

She testified that she disagrees with the contents of the AmCare records, and in particular the references to yoga. She agreed that she taught yoga to seniors, but stopped a couple of weeks before her work began at SMX. Ms. Quinn acknowledged that many people at SMX knew she taught yoga as a volunteer instructor, and she might have listed yoga as an activity on her job application. She stated that SMX possibly shared that information with Amazon, and, "If they did – went back and looked at that, they shared that with Amazon. So Amazon is clearly in collusion with SMX over this information in their progress notes. Because it's nothing I have ever said to Amazon. Nothing." She further testified, referring to the AmCare records, that, "It's pretty accurate to say that this entire page is nothing but a manufactured statement. Nothing on here is the truth. I never had these extensive conversations with any of these people."

With regard to the "Non-Work Related Declaration," (Ex. 5), Ms. Quinn conceded that it bears her signature:

> As best I can tell. I don't think it'd be that hard to – In fact, I think it would be quite easy to Photoshop. I signed so many things, and that's what the recording would testify to, is that I signed so many things and dated so many things that signing something was just another thing. I signed things constantly.

She reiterated that the significance of the document was not explained to her. Ms. Quinn acknowledged it looks like her signature, but insisted the paper was turned back, or that she thought it related to her training and never saw the title.

Ms. Quinn agreed that she told an acquaintance, Mr. Harlen, in a December 2, 2014 email that Mr. Fratsch "had me sign something yesterday that I'm sure had to do with responsibility for hurting my back." Ex. 11. She explained she realized that only

after overhearing the subsequent conversation between Ms. Weisenhutter and Mr. Fratsch. Ms. Quinn added, regarding the "Non-Work Related Declaration" discussed in the email that, "I am positive I did not know what it was," and, "I signed it for what he said it was." Ms. Quinn said it was attached to a clipboard when she signed it. She could not recall how many other documents she signed on December 1, 2014, but it was the only document she signed during her conversation with Mr. Fratsch.

Ms. Quinn called Ms. Weisenhutter as a witness. Ms. Weisenhutter testified that she issued the warning (Ex. 12) on November 22, 2014, regarding conduct on that day for three hours' time off task. She acknowledged she did not give Ms. Quinn a copy of the document. Ms. Weisenhutter did not recall accompanying Ms. Quinn to her office at the end of Ms. Quinn's shift on November 21, 2014, but rather stated she did this on November 22, 2014, to discuss the time off task.

Ms. Weisenhutter initially testified that she did "not recall" what happened on November 28, 2014, and subsequently stated four times that she did not accompany Ms. Quinn to the AmCare Clinic on that date. According to Ms. Weisenhutter, she did not learn of the injury until after that date. She denied being present during the conversation with the AmCare EMT on November 28, 2014, as well as asking Ms. Quinn to sign any documents. Ms. Weisenhutter testified that she had no conversations with AmCare staff on that date. She conceded that Amazon notifies SMX when SMX employees seek treatment at the AmCare clinic, so that SMX can complete reports regarding whether the reason for treatment is work-related or non-work related. Ms. Weisenhutter maintained she received no notice or information concerning Ms. Quinn from AmCare, and said she did not know if others at SMX communicated with AmCare. Ms. Weisenhutter testified she generally handles supervision and disciplinary matters rather than safety matters.

Ms. Weisenhutter did "not recall" a conversation with Ms. Quinn on Friday, November 28, 2014. She testified that she needed to speak with Ms. Quinn regarding time off task and any "barriers" reasonably causing time away from her duties prior to the termination, so perhaps she spoke to her on December 4, 2014. Ms. Weisenhutter additionally remembered a conversation with Ms. Quinn where "you did state, um, that you had hurt your back lifting a heavy item," but said it occurred when she terminated Ms. Quinn. Ms. Weisenhutter said it was not unusual that she did not receive information regarding Ms. Quinn's treatment at AmCare on four occasions. Ms. Weisenhutter explained that policy provides that, when an SMX employee seeks treatment at AmCare for a work-related injury, AmCare notifies SMX immediately.

Ms. Weisenhutter agreed she worked with Ms. Quinn "closely," but did not know about her AmCare treatments because Ms. Quinn did not mentioned it to her until the termination. Ms. Quinn identified "no barriers," or acceptable reasons for time off task, according to Ms. Weisenhutter. Ms. Weisenhutter did not remember Ms. Quinn asking for a different position after receiving treatment at AmCare, and subsequently said she

6

did not make that request. Ms. Weisenhutter did not remember anything from Ms. Quinn's December 1, 2014 visit to the AmCare Clinic.

On cross-examination, Ms. Weisenhutter maintained that Ms. Quinn did not mention a back injury during their November 22, 2014 conversation. On redirect, Ms. Weisenhutter did not remember talking to Mr. Fratsch on December 1, 2015, and in particular asking if he obtained Ms. Quinn's signature on any documents. Ms. Weisenhutter testified that she only recalled conversations with Mr. Fratsch after Ms. Quinn's termination, during which he told her twice that Ms. Quinn might be returning to the facility regarding a claimed work-related injury.

SMX called Mr. Fratsch, its safety manager, who testified that his first encounter with Ms. Quinn occurred on December 1, 2014. He said on that date, at approximately 11:00 a.m., he received a call from staff at AmCare informing him of Ms. Quinn's presence. He went to AmCare and discussed the situation with Ms. Ammerman and Ms. Quinn. According to Mr. Fratsch, Ms. Ammerman gave a synopsis of her notes, including that Ms. Quinn experienced pain before going to bed on November 16, 2014.

Mr. Fratsch testified that the "Non-Work Related Declaration" documents are utilized when an employee seeks treatment at AmCare for any non-work related condition, such as high blood pressure or if he or she were involved in a car accident outside of work. He said that he asked Ms. Quinn if her injury occurred at work and she replied no. According to Mr. Fratsch, he laid the document flat on a table and explained to her what it was. The document was not held on a clipboard, per Mr. Fratsch, due to an Amazon policy prohibiting the use of clipboards because they might "intimidate associates." The document was not obscured, and Ms. Quinn was not coerced into signing it, according to Mr. Fratsch. He testified that Ms. Quinn printed her name on the top of the document, in addition to signing and dating it.

On cross-examination, Mr. Fratsch testified that he did not approach Ms. Quinn about signing the "Non-Work Related Declaration" on the floor, but rather while she was at AmCare on December 1, 2014. Mr. Fratsch said he had no knowledge why AmCare failed to notify him prior to December 1, 2014, after Ms. Quinn received previous treatments, but said, "If it was a work-related injury of course I would've been called."

Per Mr. Fratsch, employees can avail themselves of Biofreeze. He agreed that, as the safety manager, AmCare staff should have informed him that an employee received treatments if the treatments were "excessive." He testified that he explained the document to Ms. Quinn and did not learn of her wish to report a work-related injury until after her termination. Mr. Fratsch said, on or about December 6, 2014, he received a message from Ms. Quinn and tried to reach out to her. When they spoke, Mr. Fratsch denied that Ms. Quinn requested to see a doctor. He testified that he reminded her of the "Non-Work Related Declaration," and asked her to come to the office to start the process,

7

to include offering a panel. He testified that he never had a conversation with Ms. Weisenhutter concerning Ms. Quinn signing the "Non-Work Related Declaration."

On redirect, Mr. Fratsch said his investigation did not reveal that Ms. Quinn's injury was work-related. On recross, he said that the investigation consisted of talking to the Ms. Ammerman in Ms. Quinn's presence, where Ms. Quinn said she experienced pain before bed on November 16, 2014; she woke up the next morning with lingering soreness; and she is a yoga instructor who previously injured her back. He repeated that he asked her specifically if she injured herself at work, and she said "no." Mr. Fratsch said that usually AmCare notifies him when an employee suffers a work-related incident or has a condition or injury affecting the employee's ability to work.

On questioning by the Court, Mr. Fratsch said Ms. Ammerman called him on December 1, 2014, to notify him that "a non-work related injury that had happened was being reported." Mr. Fratsch testified that a line appears on the original "Non-Work Related Declaration" because it is a printer mark, and, prior to obtaining Ms. Quinn's signature, he made a copy of the form from another blank copy that bore a printer mark. The document does not bear fold marks, and, upon close examination, indentations from a pen are visible on the document's backside.

Wesley Brooks, a loss prevention specialist with Amazon in its Lebanon facility, additionally testified[3] concerning video cameras directed toward the entrance to the AmCare Clinic and Amazon's video-retention policy. The videos are only retained for fourteen (14) days. There are no videos for the days in question. Mr. Brooks is the highest-ranking loss prevention specialist at the Lebanon location, and he is familiar with Amazon's video recording policies and, in particular, the recordings near the entrance to the AmCare Clinic.

Ms. Ammerman testified that she first saw Ms. Quinn at AmCare on November 28, 2014. Ms. Ammerman said that the rules require that, for a first visit, supervisors accompany SMX employees to the clinic. She could not recall whether Ms. Weisenhutter accompanied Ms. Quinn on that date. She stated that Ms. Quinn conveyed a history that her back began to hurt before going to bed on November 16, 2014. Ms. Quinn additionally told her she lifted heavy boxes earlier in the week, causing soreness. Ms. Ammerman maintained that Ms. Quinn never stated that the lifting incident

---

[3] Ms. Quinn subpoenaed the "Amazon Distribution Center" to appear at the Expedited Hearing with videotape footage from cameras near the AmCare entrance and waiting area on November 28 through December 1, 2014, for the timeframes she alleged she visited the clinic. Ms. Quinn additionally subpoenaed Amazon's "Senior Risk Management" to appear, bring the previously subpoenaed videotapes, and testify regarding Amazon's video retention policies. In response, Amazon wrote Ms. Quinn a letter from its Seattle, Washington headquarters, copying the Court, indicating that it was "unable to locate any responsive information to the subpoena because we hold video recordings only for a very limited period of time." The Court found this to be an improper response to the subpoenas. In the alternative, SMX proffered the telephonic testimony of Mr. Brooks. Through the Court's initial questioning of Mr. Brooks, the Court established his competence to testify in this matter.

8

happened on November 21, 2014. Rather, Ms. Ammerman assumed it happened on November 28, 2014. Ms. Ammerman applied Biofreeze spray on November 28, 2014. According to Ms. Ammerman, no one was in the room during the treatment, but someone from SMX might have been present while Ms. Quinn gave her history. Ms. Ammerman agreed that Ms. Quinn asked her to request that she be assigned different job duties. She explained:

> That was one of the reasons why, when you came in that day, you were sore, and you asked if I could have -- help have you moved to a different job, because you were afraid continuing in the path you were picking that day was going to – was going to injure your back, and you were not – it wasn't going allow you to rest it and let it get better.

Ms. Ammerman did not recall whether Mr. Fratsch was in the room with paperwork on November 28, 2014. Ms. Ammerman testified that Ms. Quinn told her she hurt her back several years ago doing yoga, and that she was previously a yoga instructor for seniors. She said she is careful when taking clinical notes and writes specific information.

Ms. Ammerman further testified that, on December 1, 2014, Ms. Ammerman created the electronic records. She explained that she made handwritten notes to help her create the electronic records, which are typically scanned into the records. She said it was not possible that she wrote incorrect dates because she makes written notes as she talks to patients. On cross-examination, Ms. Ammerman said that, as an EMT, she is obligated to accurately record conversations with employees, and that, had Ms. Quinn complained of a work-related accident or injury, she would have noted that in her records.

## Ms. Quinn's Contentions

Ms. Quinn argues the Court should view the "Non-Work Related Declaration" with suspicion, as companies are using these declarations to evade their obligation to provide medical benefits to injured workers. Ms. Quinn further asserts that Amazon and SMX collaborated to produce false testimony and documents.

Ms. Quinn alleges she hurt her back lifting a box that was not labelled "team lift" on to a cart. She denies a back injury prior to working for Amazon and maintains she never injured her back from practicing or teaching yoga. Ms. Quinn concedes she probably told Ms. Ammerman that she is a volunteer yoga instructor and likely told others as well, but that she never informed Ms. Ammerman that she injured herself doing yoga.

Ms. Quinn contends an MRI would verify that she sustained a recent injury and

9

soft-tissue damage. Ms. Quinn claims that Ms. Ammerman's testimony is unreliable because she did not take notes while in the treatment room,[4] nor can she remember who accompanied Ms. Quinn to AmCare. The medical records (Ex. 1) are "totally incorrect." The signature on the "Non-Work Related Declaration" (Ex. 5) is "probably" her signature.

## SMX's Contentions

SMX contends that Ms. Quinn failed to satisfy her burden of proof. SMX points out that the Court may not construe the Workers' Compensation Law in favor of either party. To find in Ms. Quinn's favor, SMX argues the Court must disregard Ms. Weisenhutter's testimony regarding Ms. Quinn providing no barriers to explain her time off task. Further, for such a finding, the Court must disregard all witness testimony, as well as the objective documentary evidence, including the medical records and the Non-Work Related Declaration. SMX asserts that Ms. Quinn, who holds a master's degree, is smart enough to know what she signed. Her subsequent email to Mr. Harlen confirms that she understood its significance.

The proof indicates that Ms. Quinn began to experience soreness in her low back from no specific cause. No competent proof establishes that the injury is work-related. Although the AmCare records noted that Ms. Quinn reported lifting heavy items, SMX asserts that Ms. Quinn likely made that statement to avoid a back injury, considering she also complained that her back was currently sore, and requested other job duties.

## Findings of Fact and Conclusions of Law

### *Standard Applied*

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk Comp App Bd LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

---

[4] Ms. Quinn did not enter such proof, but rather made this statement in argument. The Court disregards it.

10

*Factual Findings*

Ms. Quinn's back started to hurt at home on November 16, 2014. Ms. Quinn received a final written warning from SMX and signed it on November 22, 2014. Ms. Quinn did not seek medical treatment for her low back pain until November 28, 2014. Ms. Quinn reported to AmCare that she lifted items marked team lift with no help. Ms. Quinn reported a prior back issue from teaching yoga. Ms. Ammerman made handwritten notes documenting Ms. Quinn's visits, but did not create and sign the electronic progress notes until December 1, 2014. Ms. Quinn sought treatment at the AmCare Clinic from November 28 through December 1, 2014, for low back pain. On December 1, 2014, Ms. Quinn knowingly signed a "Non-Work Related Declaration" regarding the alleged injury.

*Application of Law to Facts*

To be compensable under the workers' compensation statutes, an injury must arise primarily out of and occur in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(13) (2014). Injury is defined as "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* For an injury to be accidental, it must be "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(13)(A) (2014).

The statutory requirements that an injury arise out of and in the course of the employment are not synonymous "although both elements exist to ensure a work connection to the injury for which the employee seeks benefits." *Blankenship v. Am. Ordnance Sys.*, 164 S.W.3d 350, 354 (Tenn. 2005).[5] An injury occurs in the course of employment if it takes place while the employee was performing a duty he or she was employed to perform. *Fink v. Caudle*, 856 S.W.2d 952, 958 (Tenn. Workers' Comp. App. Panel 1993). Thus, the course of employment requirement focuses on the time, place and circumstances of the injury. *Saylor v. Lakeway Trucking, Inc.*, 181 S.W.3d 314, 318 (Tenn. 2005).

By contrast, arising out of employment refers to causation. *Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997). An injury arises out of employment when there is a causal connection between the conditions under which the

[5] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk Comp App Bd LEXIS 6, *13 n.4 (Tenn. Workers' Comp. App. Bd. March 27, 2015).

11

work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005). Stated another way, an injury arises out of employment when it "has a rational, causal connection to the work." *Braden v. Sears, Roebuck & Co.*, 833 S.W.2d 496, 498 (Tenn. 1992).

In this case, Ms. Quinn testified in detail regarding a specific incident: lifting the Rockwell Steel Bench at work by herself on the morning of November 21, 2014. Ms. Quinn testified that it was November 21, 2014, and it was the same date she received the final written warning. Ex. 12. That document indicates it was created on November 22, 2014, and contains Ms. Quinn's signature. The AmCare record indicates that Ms. Quinn's back pain began November 16, 2014, while at home. The evidence conflicts regarding the date of the incident. Ms. Quinn failed to satisfy the "course of employment" requirement.

Ms. Quinn additionally failed to offer sufficient proof of causation at this time, as this Court cannot find a rational, causal connection between the alleged injury and Ms. Quinn's work.

The testimony conflicts substantially on numerous matters. Overall, Ms. Quinn's recitation of how she injured herself was thorough and sincere. However, the parties vigorously contested other significant facts. Ms. Quinn contended Ms. Weisenhutter accompanied her to the AmCare Clinic on November 28, 2014, and Ms. Weisenhutter presented a "Non-Work Related Declaration" to her on that date. Ms. Weisenhutter denied both assertions. Ms. Quinn asserted that Mr. Fratsch did not explain the "Non-Work Related Declaration," and that he concealed its title by folding it on a clipboard. Mr. Fratsch denied both assertions.

The Court finds that three of the central witnesses in this case – Ms. Quinn, Ms. Weisenhutter, and Mr. Fratsch – provided testimony that leads this Court to question their credibility. Ms. Quinn testified she did not sign the final written warning (Ex. 12), which bears her signature. She likewise testified she did not sign the "Non-Work Related Declaration," her signature could have been "Photoshopped," or if she did sign it, it was either obscured in part or, because Mr. Fratsch did not explain it to her, she did not understand what she was signing. These arguments are unpersuasive to the Court, which observes that the signature on the original document appears in ballpoint ink on the original document. The document bears no fold marks, diminishing her assertion that it was obscured in part on a clipboard. Mr. Fratsch's explanation that the line across the middle of the document is a photocopy mark is plausible. Moreover, assuming that Ms. Quinn previously saw the document when Ms. Weisenhutter presented it to her; given its simplicity; and given Ms. Quinn's advanced education, the Court rejects her contention that she did not understand what she signed.

In addition, the Court disbelieves Ms. Quinn's vehement assertions that *nothing*

within the AmCare records is accurate, and that SMX and Amazon colluded to falsify them. To the contrary, the author of these records, Ms. Ammerman, provided credible testimony regarding the events and conversations leading up to their creation. In *Kelly v. Kelly,* 445 S.W.3d 685, 694-695 (Tenn. 2014), the Tennessee Supreme Court discussed witness credibility, holding that, "The Trial Court was in the best position to determine whether [the witness] sounded calm or agitated, at ease or nervous, self-assured or hesitant, steady or stammering, confident or defensive, forthcoming or deceitful, reasonable or argumentative, honest or biased." In this case, the Court finds that Ms. Ammerman sounded calm, at ease, self-assured, steady, confident, forthcoming, reasonable and honest.

With regard to Ms. Weisenhutter, this Court questions her overall credibility, given the number of occasions during her testimony where she could not recall particular events. Three memory lapses are contained in the "History of Claim" regarding her testimony, but there were additional instances where she testified she could not recollect in response to Ms. Quinn's questioning. Yet, she conceded that they worked together "closely." Moreover, the Court finds it difficult to believe, since one of Ms. Weisenhutter's tasks is to monitor employees' productivity and time off task, that AmCare would not notify her when an employee sought treatment. Ms. Weisenhutter's assertion that it did not is not credible.

Concerning Mr. Fratsch, he provided a significant inconsistency in his testimony. On one hand, he stated he had no knowledge why AmCare failed to notify him prior to December 1, 2014, after Ms. Quinn received previous treatments, but said, "If it was a work-related injury of course I would've been called." On the other hand, answering this Court directly, he stated that Ms. Ammerman called him on December 1, 2014, to notify him that "a non-work related injury that had happened was being reported."

Given the significant discrepancies in several witnesses' testimony and their credibility problems, this Court must rely principally upon the documentary evidence and Ms. Ammerman's testimony. As previously stated, the "Non-Work Related Declaration" is plain on its face; Ms. Quinn admits signing it; and Ms. Quinn has a level of education to know what she signed. The AmCare records, supplemented by Ms. Ammerman's testimony, further support the injury as non-work related.

In an Expedited Hearing, per *McCord, supra,* an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. The Court is additionally mindful of the Workers' Compensation Law's requirement that it be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. *See* Tenn. Code Ann. § 50-6-116 (2014). Ms. Quinn represented herself passionately and earned the Court's sympathy. Nonetheless, weighing the substantial evidence presented thus far, and considering that neither party is

13

to be favored when construing the law, the Court finds that Ms. Quinn has not come forward with sufficient evidence from which this Court may conclude that she is likely to prevail at a hearing on the merits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Quinn's claim against SMX and its workers' compensation carrier for the requested medical benefits is denied.

2. This matter is set for Initial Hearing on September 2, 2015, at 10:00 a.m.

   **ENTERED this the 23rd day of July, 2015.**

   Chief Judge Kenneth M. Switzer
   **Court of Workers' Compensation Claims**

Initial Hearing:

An Initial Hearing has been set with **Chief Judge Kenneth M. Switzer, Court of Workers' Compensation Claims. You must call 615-532-9552 or toll free at 866-943-0025 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

14

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten (10) calendar days after the filing of a notice of appeal, payment must be received by check, money order or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten (10) calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before the Court Clerk may submit the record to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

15

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 22nd day of July, 2015. *23rd*

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Karen Quinn, Employee | X | | X | Karen.Quinn@mac.com; 57 3rd Ave. N., Mt. Juliet, TN, 37122 |
| Mike Newton, Employer's attorney | | | X | Mike.Newton@Leitnerfirm.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

16